UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. ANDREWS,

       Plaintiff,

-against-

CITY OF NEW YORK; HUMAN RESOURCES ADMINISTRATION; LETO CONCEPCION; VENUS BROWN; PEPREO,

       Defendants.

19-CV-6069 (CM)

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

  Plaintiff, appearing *pro se*, brings this action invoking the Court's federal question jurisdiction and alleging that Defendants have failed to provide him a "safe environment." By order dated September 10, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

## STANDARD OF REVIEW

  The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff Michael Andrews currently has four pending actions.[1] In this action, Plaintiff sues case manager Leto Concepcion from the Institute for Community Living, Inc. (ICL), and Concepcion's supervisor, identified only as "Pepreo." (Compl. at 2.) Plaintiff also names as a Defendant Venus Brown, identified as "Director of Bronx," and the City of New York and its Human Resources Administration.

Plaintiff states that his claims arose between June 2017 and 2019. He alleges that the ICL knew that the apartment at 1088 Anderson Avenue in Bronx County, New York, "had issues," but "they let [him] move in." (*Id.* at 5.) Plaintiff contends that "this was a set up from DHS, NYPD, City of New York, [and] HRA. They know there's mold" and that Plaintiff has trouble breathing. (*Id.* at 6.) Plaintiff states that someone told him that he could "go to a hotel inst[ea]d of going back to shelter because the place was unlivable." (*Id.* at 5.) Now, however, ICL "is saying no to [paying Plaintiff's] hotel fees." (*Id.*) Plaintiff also has not received his mail, though the circumstances of this are unclear.

It appears that Plaintiff has a new housing situation because he states that "the new place has stuff wrong and ICL is not fixing it." (*Id.*) Plaintiff seeks more than $16,000 in "reimbursement for all hotel fees."

---

[1] Plaintiff has an action challenging the denial of social security benefits, *Andrews v. Comm'r of Social Security*, ECF 1:19-CV-4095, 2 (JGK) (S.D.N.Y.), an action relating to criminal proceedings, *Andrews v. DHS*, ECF 1:19-CV-5622, 2 (CM) (S.D.N.Y.), and an action against a lawyer who represented him in a case that settled, *Andrews v. Coalition for the Homeless*, ECF 1:19-CV-6070, 2 (S.D.N.Y.).

**DISCUSSION**

**A.    Human Resources Administration**

As an agency of the City of New York, the Human Resources Administration (HRA), is not an entity that can be sued in its own name. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Gault v. Admin. Fair Hearing at 14 Boerum Place*, No. 14-CV-7398, 2016 WL 3198280, at *3 (E.D.N.Y. June 8, 2016); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). Instead, any claims against the HRA must be brought against the City of New York. The Court therefore dismisses Plaintiff's claims against the HRA.

**B.    City of New York**

When a plaintiff sues a municipality under 42 U.S.C. § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality such as the City of New York, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town*

*of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). Plaintiff's allegation that "this was a set up" involving the New York City Police Department, the Department of Homeless Services, and the Human Resources Administration is insufficient to plead that any policy or custom of the City of New York caused a violation of Plaintiff's rights.

Moreover, the government has no general duty under the U.S. Constitution to protect an individual from harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). The Second Circuit has recognized two exceptions to this general rule. First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 200. This affirmative duty to protect arises "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*

Second, the government may assume some obligation when it affirmatively creates or increases the danger. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). "The cases where the state-created danger theory was applied were based on discrete, grossly reckless acts committed by the state or state actors leaving a discrete plaintiff vulnerable to a foreseeable injury." *Clarke v. Sweeney*, 312 F. Supp. 2d 277, 291 (S.D.N.Y. Mar. 30, 2004). The state-created danger doctrine generally applies where state actors facilitate harm, such as "where police officers told skinheads that they would not prevent them from beating up protesters in the park . . . [or] where a prison guard told inmates that it was 'open season' on a prisoner, and the inmates beat up the prisoner." *Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008).

The allegations of the complaint do not state a claim that the City of New York or its employees violated any duty owed to Plaintiff that arises under the U.S. Constitution. The government neither prevented Plaintiff from acting on his own behalf in obtaining alternative housing nor facilitated harm to him. *See, e.g., Deshaney*, 489 U.S. at 193. Plaintiff's § 1983 claims against the City of New York therefore fail to state a claim for a violation of his constitutional rights.

### C. Private Parties

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

A private entity's activity can be attributed to the government in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the government. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Providing housing is not a public function because it is not the exclusive province of the state. *See, e.g., Okon v. Appia*, No. 06-CV-6810 (CPS), 2008 WL 2245431, at *14 (E.D.N.Y.

2008; *George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). Moreover, neither government funding nor government regulation suffices for a private entity to be deemed a state actor. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding that government must command or encourage the alleged wrongdoing for there to be state action based on licensing or regulation); *Kohn*, 457 U.S. at 838. The crucial issue is the relationship between the government and the challenged *action* taken by the private actor, not the relationship between the government and the private entity. *George*, 2012 WL 2512964, at *4, n.5.

In providing housing to Plaintiff, ICL and its employees are not engaged in state action. Plaintiff therefore cannot state a claim under § 1983 against ICL case manager Leto Concepcion or his supervisor Pepreo, and Plaintiff's § 1983 claims against these defendants must therefore be dismissed.

**D.** **Personal Involvement**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiff names Venus Brown as a defendant in the caption of the complaint, but he fails to mention Defendant Brown in the body of the complaint or plead any facts about what Brown personally did or failed to do that violated his rights. Because Plaintiff does not allege any facts showing how Defendant Brown was personally involved in the events underlying his claims, his § 1983 claims against Brown are therefore dismissed for failure to state a claim on which relief may be granted.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear if the defects in Plaintiff's complaint cant be cured with an amendment, the Court grants Plaintiff leave to amend his complaint.

## LEAVE TO AMEND

Plaintiff is granted leave to amend his complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the

original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-6069 (CM). The Clerk of Court is directed to attach an Amended Civil Rights Complaint form to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

Dated: September 11, 2019
New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge